IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DERIC LAMONS EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 105-132 |
| ) | |
| LOGAN MARSHALL, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Deric Lamons Evans, an inmate at Valdosta State Prison in Valdosta, Georgia, has filed the above-captioned case pursuant to 42 U.S.C. § 1983. Now before the Court is Defendant's motion for summary judgment. (Doc. no. 30). Plaintiff opposes the motion. (Doc. no. 40). For the reasons that follow, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

### I.   BACKGROUND

In his amended complaint, Plaintiff states that, while incarcerated at the McDuffie County Jail ("Jail"), Defendant was deliberately indifferent to his medical needs, namely by failing to arrange a dental appointment to extract an infected tooth. Specifically, Plaintiff claims that he was taken to see a dentist, Dr. Robert Berry, in June 2005. (Doc. no. 7, p. 5). Dr. Berry reportedly told the Sheriff's Deputy who was with Plaintiff at the appointment that Plaintiff had an infected tooth that required surgery. (Id.). Plaintiff alleges that the deputy

then stated that he would have to check with Defendant about setting up an appointment with an oral surgeon. (Id.). According to Plaintiff, it was Defendant's responsibility to set up the appointment with an oral surgeon, but no such appointment was ever made. (Id.). Plaintiff reported that it was very painful to eat, and despite his requests, he did not receive soft food. (Id.). According to Plaintiff, he was not provided with pain medicine and did not receive any further medical attention for his infected tooth, resulting in the infection festering and causing additional medical problems when the "blood and puss leak[ed] in [Plaintiff's] throat." (Id.). Thereafter, Defendant answered, denying all liability,[1] and also submitted the instant motion for summary judgment. (Doc. nos. 19, 30).

In his motion, Defendant contends that the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, dictates that Plaintiff's complaint be dismissed because (1) Plaintiff failed to exhaust his administrative remedies for his claim, and (2) Plaintiff's decayed tooth does not amount to more than a *de minimis* medical condition. (Doc. no. 33, pp. 3-6). Further, Defendant argues that Plaintiff's claim amounts to an improper attempt to impose respondeat superior liability, and Plaintiff failed to cite a causal connection between Defendant and the alleged constitutional violation. (Id. at 6-7, 9). Defendant claims that even if Plaintiff properly brought his medical complaint against Defendant, Defendant was not deliberately indifferent to Plaintiff's medical needs. (Id. at 7-9).[2]

---

[1] Defendant also denied that Plaintiff had exhausted his administrative remedies. (Doc. no. 19, p. 2, ¶¶ II(B), (C)).

[2] The Court acknowledges that Defendant also argued that he was entitled to Eleventh Amendment and qualified immunity. (Doc. no. 33, pp. 6-7, 9-10). However, the Court further notes that Defendant failed to plead these defenses in his answer to Plaintiff's complaint. (See doc. no. 19; see also Steger v. GE, 318 F.3d 1066, 1077 (11th Cir. 2003)

With his motion, Defendant also provided his own affidavit and one from Captain Chris Durden, Chief Jailor at the Jail, as well as Plaintiff's responses to Defendant's interrogatories and request for admissions, to provide the following relevant information. In his affidavit, Defendant avers that he had no significant personal involvement with Plaintiff, and he was not involved in arranging dental appointments for inmates, as those duties were delegated to Captain Durden or other Jail staff. (Doc. no. 31, ¶ 3). Defendant states that if he receives requests about medical conditions, he directs the Jail staff to investigate the matter and to arrange for the inmate to have access to the necessary medical care in accordance with the Jail's policies. (Id. ¶ 6). Defendant admits that he received information in October 2005, that Plaintiff had made a medical complaint, and he directed Captain Durden to inquire into the matter and to take appropriate action. (Id. ¶ 7). Defendant states that he handles the appeals of grievance outcomes, but he never received an appeal concerning a grievance from Plaintiff. (Id. ¶ 10). Attached to Defendant's affidavit is a Jail record, demonstrating that the pain medication (3-day supply) and

---

("The pleading of an affirmative defense is mandated by Federal Rule Civil Procedure 8(c) to be presented in a responsive pleading, and a party waives its right to advance an affirmative defense by failing to assert it in such." (citation omitted)). Although the docket does not reflect that Defendant's amended answer (doc. no. 38) was stricken from the record, in this Court's November 17, 2006 Order, the Court determined that Defendant's amended answer was void. (Doc. no. 43, p. 3). Nevertheless, the Court need not determine whether Defendant can now assert these immunity defenses, as Defendant is entitled to summary judgment on other grounds. Moreover, the Supreme Court has recently held that under the PLRA, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, __ S. Ct. __, Case No. 05-7058, 2007 WL 135890, at * 11 (Jan. 22, 2007). In this case, Defendant has alleged sufficient information in his answer to allow an exhaustion defense. (See doc. no. 19, p. 2, ¶¶ II(B), (C)).

3

antibiotics (7-day supply) Dr. Berry prescribed for Plaintiff were obtained and administered to Plaintiff. (Id. at Ex. A-1).

Captain Durden avers in his affidavit that a copy of the inmate handbook, containing the Jail's grievance procedures, was posted in the inmate living quarters in plain view of all inmates housed at the Jail. (Doc. no. 32, ¶¶ 4, 6). He also states that Plaintiff failed to file a grievance for his dental complaint. (Id. ¶ 8). Captain Durden further avers that following Plaintiff's dental appointment with Dr. Berry, he was "apprised of Dr. Berry's indication that [Dr. Berry] was not qualified to perform [the] oral surgery required to extract [Plaintiff's] tooth." (Id. ¶ 11). Upon learning this information, Captain Durden maintains that either he or another Jail administrator called four dental offices, all of whom declined to perform the extraction. (Id. ¶ 12). Captain Durden then asked Plaintiff for the name of the dentist who had treated Plaintiff in the past, and Plaintiff provided that information. (Id. ¶ 13). Plaintiff's previous dentist refused to perform the extraction, and ultimately, the Jail staff was unable to find an oral surgeon who was willing to extract Plaintiff's tooth. (Id. ¶¶ 12-14). Captain Durden states that he then contacted the Georgia Department of Corrections ("GDOC"), asking whether it could take custody of Plaintiff "ahead of schedule," since the GDOC could provide an oral surgeon to extract Plaintiff's tooth. (Id. ¶ 15). In response to Captain Durden's request, the GDOC took custody of Plaintiff.[3] (Id. ¶ 16).

---

[3] Captain Durden does not provide any specific dates, or otherwise set forth a specific time frame in which he contacted the dentists and the GDOC. In Defendant's response to Plaintiff's interrogatories, Defendant stated that Captain Durden spoke with Plaintiff on or around October 20, 2005, about Plaintiff's teeth, and at some point around that time, Captain Durden spoke to Plaintiff about contacting Plaintiff's previous dentist. (Doc. no. 40, Def.'s Resp. to Pl.'s Interrogs., ¶¶ 21-22). Therefore, based on this and the above information, the Court assumes that Captain Durden contacted the first four dentists offices prior to October

4

Captain Durden further avers that on October 11, 2005, Plaintiff asked Captain Durden to place him on a non-meat diet.[4] (Id. ¶ 17). Captain Durden agreed, instructing the Jail cook to serve Plaintiff a non-meat diet. (Id.). Almost a month later, Plaintiff declined his special non-meat diet on two separate occasions, and as a result, Captain Durden removed Plaintiff from the list of inmates requiring a non-meat diet. (Id. ¶ 18; Ex. B-7). The evidence indicates that Captain Durden notified Plaintiff that he was being taken off the non-meat diet. (Id. at Ex. B-7).

In addition to the two affidavits, Defendant also provided Plaintiff's response to Defendant's interrogatories, wherein Plaintiff stated that he did not fill out any grievance forms because he was unaware of such forms or the grievance procedure. (Doc. no. 32, Pl.'s Resp. to Def.'s First Interrogs., ¶ 21). Defendant further provided Plaintiff's response to Defendant's request for admissions, wherein Plaintiff admitted that (1) he was provided with access to medical/dental care during his incarceration at the Jail, (2) he received all medication prescribed to him during his incarceration at the Jail, and (3) he never submitted any grievance forms because he was unaware of any formal grievance procedure. (Id. at Pl.'s Resp. to Def.'s Reqs. for Admis., ¶¶ 6-9).

In response to Defendant's summary judgment motion, Plaintiff argues that Defendant was deliberately indifferent to his dental needs because after Dr. Berry determined that Plaintiff's tooth needed to be extracted, Defendant allowed Plaintiff to sit in the Jail for

---

20, 2005, got the information about Plaintiff's previous dentist and contacted that dentist around October 20, 2005, and spoke with the GDOC at some point after October 20, 2005.

[4] Captain Durden states that Plaintiff mentioned nothing about his teeth and did not request a soft diet. (Doc. no. 32, ¶ 17).

six months without setting Plaintiff up with an appointment with an oral surgeon, or otherwise doing anything to ease Plaintiff's pain. (Doc. no. 40, pp. 2-3). Plaintiff contends that although Defendant stated that he called several dentists trying to find someone to extract Plaintiff's tooth, Defendant failed to state whether he contacted the dentists on the referral list that Dr. Berry provided. (Id. at 2). Moreover, Plaintiff avers that because Defendant did not file an expert witness report, Defendant is precluded from filing any "opinions" with the Court, whether these opinions be his own or other officers or employees at the Jail.[5] (Id. at 3). Finally, Plaintiff requests that the Court enter a default against Defendant because he failed to supplement his answers to Plaintiff's interrogatories.[6] (Id. at 1-2).

With his response, Plaintiff provided Defendant's responses to Plaintiff's first interrogatories, in which Defendant stated, in relevant part, that if Dr. Berry cannot provide dental care to inmates, the Jail staff attempts to arrange for treatment by a different dental provider. (Id. at Ex. A, ¶ 9). Defendant further stated that "any dentist within a reasonable geographic area who was willing to treat Plaintiff would have been permitted to do so, so

---

[5] Despite Plaintiff's contention to the contrary, Defendant did not have to file an expert witness report with the Court before he filed his motion for summary judgment setting forth his position as to Plaintiff's claims.

[6] Despite Plaintiff's arguments, he is not entitled to a default judgment. If Plaintiff did not receive the discovery that he requested, Plaintiff should have filed a motion to compel with the Court during the time period in which discovery was allowed. Filing such a request in his response to Defendant's summary judgment motion, which was well after the time period for discovery had closed, is not proper and will not be considered by the Court.

long as other necessary incarceration protocols (such as security measures) could be adhered to under such care or treatment." (Id. ¶ 24).

Plaintiff also provided a statement by Dr. Berry, explaining that Dr. Berry diagnosed Plaintiff with a decayed tooth that needed to be extracted by an oral surgeon. (Id. at Ex. B). Dr. Berry stated that he informed Plaintiff and the officers who accompanied Plaintiff that Plaintiff would need a referral to an oral surgeon, and he gave the officers a list of oral surgeons to whom the Jail normally refers patients. (Id.). Dr. Berry indicated that he placed Plaintiff on antibiotics to reduce the infection and swelling. (Id.).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991)

---

[7] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

7

(*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party meets its burden, the non-moving party must then "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III. ANALYSIS

**A.  Exhaustion**

Although Plaintiff indicated in his amended complaint that he properly presented his complaints about his dental care to the administrative grievance committee at the Jail and appealed the denial of his grievance, Defendant asserts otherwise in his summary judgment motion.[8] The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). The Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1231, 1325-26 (11th Cir. 1998).

Moreover, the PLRA "requires proper exhaustion." Woodford v. Ngo, 126 S. Ct. 2378, 2386 n.2 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 2386 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 126 S. Ct. 2978 (2006).

---

[8] It should be noted that in his response to Defendant's summary judgment motion, Plaintiff did not oppose Defendant's claim that Plaintiff did not properly exhaust his administrative remedies. (See doc. no. 40).

9

Consequently, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp. 2d 1360, 1362 (N.D. Ga. 1998).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Finally, in this Circuit, "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998).

Here, Captain Durden avers that a review of Plaintiff's file revealed that Plaintiff never submitted any written grievances while he was incarcerated at the Jail (doc. no. 32, ¶¶ 6, 8), and Defendant avers that Plaintiff never submitted any appeals from the denial of a grievance (doc. no. 31, ¶ 10). Despite having stated in his amended complaint that he filed a formal grievance and appealed the denial of that grievance (doc. no. 7, pp. 3-4), in his response to Defendant's request for admissions, Plaintiff conceded that he made no formal complaints to Defendant concerning his dental treatment because "no formal grievance procedure exist[ed] to [his] knowledge," and he filed no grievance forms during his incarceration because "no such forms were ever administered to [him]." (Doc. no. 32, Ex. "Plaintiff's Answers to Defendant Logan Marshall's First Request For Admissions," ¶¶ 8, 9).

However, Captain Durden avers that the inmate handbook, containing the grievance procedure used at the Jail, was posted in the inmate living quarters in plain view of all inmates housed at the Jail. (Doc. no. 32, ¶ 4). This provides compelling support for Defendant's contention that Plaintiff knew, or should have known, of the grievance procedure at the Jail. Notably, Plaintiff's statement that the forms were not administered to him does not contradict the fact that the grievance procedures were in plain view, or otherwise suggest that he asked for, but was denied, a grievance.[9] In sum, the evidence in the record indicates that Plaintiff has failed to exhaust his administrative remedies, and Defendant's summary judgment motion should be granted on this basis.

## B.   Deliberate Indifference

Even if the Court were to consider Plaintiff's deliberate indifference claim exhausted and review Plaintiff's claim on the merits, Plaintiff has not met his burden of demonstrating that Defendant was deliberately indifferent to his dental needs. The Court notes that it is questionable whether Plaintiff has established a causal connection between Defendant and

---

[9] The Court also takes judicial notice of Delatorre v. Marshall, Civil Case No. 105-157 (S.D. Ga. June 29, 2006), wherein the plaintiff did not utilize the grievance procedure that was available at the McDuffie County Jail. See United States v. Rey, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) (recognizing that court can take judicial notice of its own records). The District Judge ultimately dismissed the complaint in Delatorre because the plaintiff failed to exhaust his administrative remedies. As such, in the instant case, Plaintiff's alleged ignorance of the grievance policy at the Jail does not excuse him from the PLRA's exhaustion requirement. See, e.g., Hatch v. Burke County Jail, Civil Case No. 106-080 (S.D. Ga. Aug. 18, 2006) (taking judicial notice of available administrative remedies at Burke County Jail, based on record in previous case, and rejecting inmate plaintiff's claim that he had no notice of grievance procedure).

11

the alleged constitutional violation,[10] or whether Plaintiff is improperly suing Defendant on the basis of respondeat superior.[11] Even giving Plaintiff the benefit of the doubt and assuming for the sake of argument that he has established a causal connection and has not brought this action on the theory of respondeat superior, Defendant is still entitled to summary judgment on the merits of Plaintiff's claim.

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on prisoners. Campbell v. Sikes, 169 F.3d 1353, 1362 (11th Cir. 1999). Because a prisoner is unable to care for his medical needs as a result of his incarceration, the Eighth Amendment requires prison authorities to provide medical care for those they incarcerate. Estelle v. Gamble, 429 U.S. 97, 103 (1976). Based on this rudimentary principle, the Supreme Court concluded that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Id. at 105.

In order to succeed in a medical indifference claim, a plaintiff must satisfy both an objective and a subjective component. Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). To satisfy the objective component, a plaintiff must show that his

---

[10] "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Defendant avers that he had no personal involvement with Plaintiff during Plaintiff's incarceration at the Jail, and he was not involved in arranging medical or dental appointments for inmates. (Doc. no. 31, ¶¶ 3, 4).

[11] In the Eleventh Circuit, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Defendant avers that any inmate requests about medical care are delegated to other Jail staff members. (Doc. no. 31, ¶¶ 6, 7).

medical need is serious, or that the need "has been diagnosed by a physician as mandating treatment" or "is so obvious that even a lay person would easily recognize the need for a doctor's attention." Id. at 1187. For the subjective component, a plaintiff must show that the defendant possessed "knowledge of the need for medical care" and displayed "the intentional refusal to provide that care." Id. at 1186.

The Eleventh Circuit has also specifically addressed the level of dental care owed to prisoners in Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). In that case, the court considered a prisoner's claim alleging that prison dental staff violated his Eighth Amendment rights by delaying eighteen months in providing him with dentures. Id. at 1239-41. The plaintiff alleged that his lack of teeth made it painful for him to eat hard foods and forced him to improvise a soft diet. Id. at 1239. As a result, the plaintiff lost twenty pounds. Id. The plaintiff also experienced pain when his two lower teeth would slice into his upper gums and cause his gums to bleed. Id. Recognizing that delayed treatment may give rise to a constitutional claim, the Eleventh Circuit determined that the inmate's claim survived summary judgment "given his recognized need for denture treatment, the nature of his continuing problems, the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay." Id. at 1247.

In the instant case, although Plaintiff has satisfied the objective standard by demonstrating that his tooth was so infected and decayed that it required removal by an oral surgeon, Plaintiff has not met the subjective component of the deliberate indifference standard. After Dr. Berry determined that Plaintiff's tooth needed to be extracted in June 2005, despite Plaintiff's arguments to the contrary, Defendant and Captain Durden did not

refuse to take any action while Plaintiff experienced "extreme pain in his tooth." (Doc. no. 40, p. 3). As noted above, Captain Durden contacted four dentists' offices after Dr. Berry's diagnosis in June 2005, and when he asked Plaintiff about his tooth in October 2005. Around the same time that he asked Plaintiff about his tooth, Captain Durden obtained the name of Plaintiff's previous dentist. At some point thereafter, Captain Durden contacted Plaintiff's previous dentist, who also declined to extract Plaintiff's tooth. After all of the dentists that Captain Durden contacted declined to perform the extraction, Captain Durden contacted the GDOC, knowing that they had an oral surgeon who could remove Plaintiff's infected tooth, requesting that they take custody of Plaintiff "ahead of schedule" in order to attend to Plaintiff's infected tooth. Despite Plaintiff's arguments, this evidence demonstrates that Defendant made an attempt to address Plaintiff's dental needs.

Plaintiff contends that Defendant was liable because there is no evidence that any of the dentists that Dr. Berry provided in his referral list were contacted. Even if the dentists that Captain Durden contacted were not on Dr. Berry's list, it appears that Captain Durden contacted five dentist offices, over the course of several months, in an attempt to find a dentist willing to extract Plaintiff's tooth. Although Captain Durden could not find a dentist willing to perform the extraction, this is not conclusive evidence that Defendant was deliberately indifferent to Plaintiff's dental needs.

Moreover, Plaintiff was not subject to inexcusable delay in getting his tooth extracted. Plaintiff claims that he waited six months to get his tooth pulled (from June 2005, when he was diagnosed, until January 2006, after he was transferred to GDOC custody), and during that time, Defendant did nothing to alleviate his pain. Although in his affidavit,

Captain Durden did not provide the dates on which he contacted various dentists to find someone willing to extract Plaintiff's tooth, it appears from the record that Captain Durden contacted four dentist offices between June and October 2005, contacted Plaintiff's previous dentist around the end of October 2005, and sometime thereafter contacted the GDOC about taking early custody of Plaintiff. Based on this information, there was not inexcusable delay in attempting to set up an appointment with an oral surgeon. Cf. Farrow, 320 F.3d at 1235 (holding that delay of eighteen months in providing dentures, combined with other factors, constituted inexcusable delay). Further, at Plaintiff's appointment with Dr. Berry, Dr. Berry prescribed a 3-day supply of pain medication and a 7-day supply of antibiotics. (Doc. no. 40, Ex. B). The record demonstrates that the Jail obtained these prescriptions and provided them to Plaintiff (doc. no. 31, Ex. A-1), and Plaintiff admits that he "received all medication prescribed to him during [his] incarceration at the [Jail]" (doc. no. 32, Pl.'s Resp. to Def.'s Req. for Admis., ¶ 7).

In addition, once Dr. Berry diagnosed Plaintiff's infected tooth, Plaintiff waited several months to ask Captain Durden to place him on a non-meat diet, and he never requested a soft diet. Once Plaintiff asked Captain Durden to place him on the non-meat diet, Captain Durden honored Plaintiff's request. It was not until Plaintiff voluntarily chose to abandon his diet on two separate occasions that he was taken off the special non-meat diet. Moreover, as noted above, Plaintiff never filed a grievance about his dental treatment, nor did he complain to Defendant, formally or otherwise, about his teeth or not getting an appointment with an oral surgeon. The record also contains no evidence that Plaintiff complained to Captain Durden, other than when Captain Durden asked Plaintiff about his

tooth in October 2005, that his tooth was still bothering him, or otherwise indicated that he was still in significant pain. Accordingly, the evidence in the record does not support Plaintiff's claim that Defendant was deliberately indifferent to Plaintiff's medical needs.

## IV. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 6th day of February, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE